IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANE DOE (S.E.S., an individual) | : |
| | : |
| v. | : Civil Action No. DKC 24-3776 |
| | : |
| CHOICE HOTELS INTERNATIONAL, INC., et al. | : |

**MEMORANDUM OPINION**

Plaintiff Jane Doe ("Plaintiff") filed this Trafficking Victims Protection Reauthorization Act ("TVPRA") action against Choice Hotels International, Inc., Choice Hotels International Service Corp. (collectively, "Choice Defendants"),[1] and Phillip Hall Properties, L.L.C. ("PHP"). She alleges that she was the victim of sex trafficking at an Alabama hotel owned by PHP, the purported franchisee of Choice Defendants. Presently pending and ready for resolution in this TVPRA case is the motion to transfer venue to the United States District Court for the Southern District of Alabama or to dismiss filed by Choice Defendants. (ECF No. 18). The issues have been briefed, and the court now rules, no

---

[1] Choice Defendants contend that Choice Hotels International Service Corp. is not a proper defendant to this case because "[i]t does not play any meaningful role in the activities described in the [complaint]." (ECF No. 18-1, at 10 n.1). Because the court will grant the motion to transfer venue, it does not reach any arguments regarding dismissal. Plaintiff's allegations against the two entities are identical.

hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to transfer venue will be granted. Choice Defendants' alternative motion to dismiss, nonparty Trent Hall's correspondence, and Plaintiff's motion for leave to amend the complaint remain for resolution in the transferee district.

## I. Background

### A. Factual Background[2]

S.E.S., proceeding as Jane Doe, alleges that she was the victim of sex trafficking "an incalculable number of times" at a Quality Inn hotel in Mobile, Alabama, between July 2013 and at least December 2014. (ECF No. 14 ¶¶ 26, 30, 32). A franchisee of Choice Defendants operates the Quality Inn. (*Id.* ¶¶ 17–19). Doe alleges that her trafficker "forced [her] to engage in commercial sex acts numerous times a day"; he "would drug her up and physically and/or mentally abuse her." (*Id.* ¶ 27). She alleges that, when she tried to leave, he "would beat her and/or threaten her." (*Id.* ¶ 28). His actions put Doe "in constant fear for her life." (*Id.* ¶ 27).

As general background, Doe notes the particular prevalence of sex trafficking in the hotel industry. (*Id.* ¶ 34). She alleges that "[t]he signs of sex trafficking in a hotel environment follow

---

[2] All facts herein are alleged in the operative complaint.

2

well-established patterns and can easily be detected by appropriately trained staff." (*Id.* ¶ 38). Doe alleges that, given the strong connection between sex trafficking and the hotel industry, "reasonable diligence required treating signs of commercial sex activity, particularly with apparent and obvious involvement of a 'pimp,' as evidence of sex trafficking[,] . . . [and] required Defendants to avoid benefiting from the rental of its rooms for commercial sex." (*Id.* ¶ 42).

Doe alleges that Choice Defendants and PHP "have known, since well before [her] trafficking, that sex trafficking was ongoing and widespread at Choice Hotels branded properties including the [Quality Inn]" named in the complaint. (*Id.* ¶ 49). She contends that "each of the Defendants monitored criminal activity [related to sex trafficking] occurring at Choice hotels branded properties" and highlights news stories from around the country between 2004 and 2015 regarding sex trafficking at Choice Hotels branded properties. (*Id.* ¶¶ 50, 52). Doe then points to online reviews between 2006 and 2018 noting sex trafficking activity and apparent prostitution at Choice Hotels branded properties across the country. (*Id.* ¶ 55). She alleges that "[t]he common use of Choice Hotel branded hotels for sex trafficking became a nationwide problem that stemmed from decisions made at the corporate/franchisor level." (*Id.* ¶ 56).

Doe next alleges that Choice Defendants and PHP "were specifically aware that sex trafficking was widespread and ongoing at the Quality Inn" named in the complaint. (*Id.* ¶ 60). Reasoning upon information and belief that Choice Defendants "manage and monitor" internet reviews for the Quality Inn at issue, Doe highlights various internet reviews of the Quality Inn between 2015 and 2020 that repeatedly note the abundance of used condoms in rooms and apparent prostitutes on hotel premises. (*See id.* ¶ 62). Doe alleges that her trafficker and others "selected this [Quality Inn] because of policies and practices that created a favorable environment for trafficking and because hotel staff turned a blind eye to . . . well-known 'red flags' for sex trafficking in the hospitality industry." (*Id.* ¶ 63).

Concerning her own trafficking, Doe lists numerous red flags that she alleges put hotel staff on notice that she was being trafficked. For example, "[t]he hotel rooms in which she was trafficked were frequently paid for with cash or prepaid cards"; the "Do Not Disturb" sign was hung on her door for days at a time; Doe "would give hotel management and/or employees 'hush' money not to report her"; there was "heavy foot traffic in and out of [her] room involving men who were not hotel guests," which hotel management noticed; and Doe "was forced to see at least 5 johns

4

every day," who would come and go at "unusual hours" and "for brief periods of time." (*Id.* ¶ 73).

Doe alleges that, as a result, PHP and Choice Defendants knew or should have known of her sex trafficking. (*Id.* ¶¶ 75–76). Furthermore, she contends that Choice Defendants and PHP knowingly benefitted from her trafficking by continuing to rent rooms to her trafficker and others. (*Id.* ¶ 95).

**B.   Procedural Background**

Plaintiff filed the operative three-count complaint on March 31, 2025, against PHP[3] and Choice Defendants. (ECF No. 14). All counts arise under the TVPRA: Count I alleges perpetrator liability against PHP, Count II alleges beneficiary liability against PHP and Choice Defendants, and Count III alleges vicarious liability

---

[3] Plaintiff appears to have named PHP as the franchisee defendant in error. She attempted to serve PHP unsuccessfully on multiple occasions, (ECF No. 15, at 2), before finally accomplishing service in April 2025, (ECF No. 26-2, at 5). She then learned that PHP was the incorrect party, an error she ascribes to the "unique address numbering system in Mobile, Alabama, that had incorrectly attributed the address of the Quality Inn where she was trafficked to the wrong entity." (ECF No. 23-1, at 2). Trent Hall, presumably related to Phillip Hall of PHP, has filed correspondence styled as a motion to dismiss in which he explains that PHP went out of business in 2010 and never owned the Quality Inn at issue. (ECF No. 21). Plaintiff has since filed a motion for leave to amend her complaint to substitute the proper franchisee defendant, which she identifies as Meenal LLC, an Alabama limited liability company registered and headquartered in Alabama, (ECF No. 23-3 ¶ 18), as well as to amend other allegations. The Choice Defendants oppose the motion. (ECF No. 26).

5

against Choice Defendants. (*Id.* ¶¶ 104-16). On April 14, 2025, Choice Defendants filed a motion to transfer venue to the Southern District of Alabama or, in the alternative, to dismiss. (ECF No. 18). Plaintiff filed her opposition on April 28, 2025. (ECF No. 24). Choice Defendants then filed their reply on May 12, 2025. (ECF No. 25). Since then, Choice Defendants have filed two notices of supplemental authorities regarding similar cases decided in this district. (ECF Nos. 31; 32).

**II. Analysis**

Choice Defendants move to dismiss or transfer for improper venue under Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1406. In the alternative, they move to transfer venue, even if proper in this district, under 28 U.S.C. § 1404(a). The venue statute provides two relevant bases to lay venue. First, venue is permissible in a "district in which any defendant resides, if all defendants are residents of the State in which the district is located," with residency of entities determined based on where they are subject to personal jurisdiction. 28 U.S.C. § 1391(b)(1), (c)(2). Second, venue is permissible in a "district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* § 1391(b)(2). Choice Defendants argue that venue is improper in the District of Maryland because the court lacks personal jurisdiction over the franchisee defendant and a substantial part

of the events giving rise to Plaintiff's claim did not occur in Maryland. (ECF No. 18-1, at 14–19). Although it may well be that the court lacks personal jurisdiction over the franchisee defendant and that a substantial portion of the relevant events did not occur here, it is not necessary to decide those questions because transfer under 28 U.S.C. § 1404(a) is available.[4] *See Doe (C.T.K.) v. Choice Hotels Int'l, Inc.*, No. 24-cv-2836-DLB, 2025 WL 2430024, at *3 (D.Md. Aug. 22, 2025) ("[W]hen jurisdiction over a defendant is doubtful, 'transfer is often the better course.'" (quoting *Pilz v. Pere*, No. 07-cv-1314-CCB, 2007 WL 2572433, at *1 (D.Md. Aug. 30, 2007))).

Section 1404(a) provides that "a district court may transfer any civil action to any other district or division where it might have been brought" if doing so is to "the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). "The threshold question on a motion to transfer is whether the action might have been brought in the transferee forum." *Howard Univ. v. Watkins*, No. 06-cv-2076-DKC, 2007 WL 763182, at *3 (D.Md. Mar. 12, 2007). In other words, the court must assure itself that "venue and personal jurisdiction are proper

---

[4] Because all of Plaintiff's claims arise under federal law, there are no choice of law consequences to proceeding under § 1404 rather than § 1406.

7

in the transferee forum." *Corry v. CFM Majestic Inc.*, 16 F.Supp.2d 660, 663 (E.D.Va. 1998).

As to venue, it is uncontested that this case could have been brought in the Southern District of Alabama. A "substantial part of the events or omissions giving rise to the claim" occurred in the Southern District of Alabama because that is where Doe alleges the sex trafficking took place. 28 U.S.C. § 1391(b)(2).

Personal jurisdiction is straightforward, too. A forum has personal jurisdiction over a defendant if the defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Supreme Court of the United States has split the personal jurisdiction analysis into two branches: specific and general. A court may exercise specific jurisdiction over a defendant when the "suit aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984). On the other hand, courts may exercise general jurisdiction over the defendant if the defendant is at home in the forum—meaning, for business entities, that the forum is the defendant's place of incorporation or principal place of business—even if the suit is

unrelated to the defendant's forum contacts. *See Daimler AG v. Bauman*, 571 U.S. 117, 127, 137 (2014).  At the very least, the proper franchisee defendant here is subject to specific personal jurisdiction in the Southern District of Alabama because the alleged sex trafficking arose out of the franchisee's operation of a hotel there.[5]

The Choice Defendants would likewise be subject to specific personal jurisdiction in the Southern District of Alabama, as their counsel has expressly acknowledged in at least one other case within this district.  *Doe (J.S.H.) v. Choice Hotels Int'l, Inc.*, No. 24-cv-1598-TDC, 2025 WL 2108792, at *12 (D.Md. July 28, 2025) ("[A]s acknowledged at the hearing by Defendants, personal jurisdiction would exist [in the transferee forum] over . . . Choice.").  Even if Choice were to change its position, Judge Boardman observed that "in other nearly identical TVPRA cases, courts have agreed that the court in a franchisee's home jurisdiction may exercise personal jurisdiction over an out-of-

---

[5] It is quite likely that the proper franchisee defendant is at home in the Southern District of Alabama and thus subject to general jurisdiction there.  In her proposed second amended complaint, Plaintiff alleges that the proper franchisee defendant is Meenal LLC, an entity registered and headquartered in Alabama. (ECF No. 23-2 ¶ 18).  Due to Plaintiff's failure to identify the proper franchisee entity at the outset, however, the court lacks sufficient facts to reach such a conclusion.

9

state franchisor." *Doe (C.T.K.)*, 2025 WL 2430024, at *4 (collecting cases).

Therefore, this case could have been brought in the Southern District of Alabama, satisfying the § 1404(a) threshold inquiry.

Once satisfied that the moving party has met this threshold requirement, courts in the United States Court of Appeals for the Fourth Circuit apply a four-factor test to transfer motions: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (citing, inter alia, *Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md. 2002)). "The burden is on the moving party to show that transfer to another forum is proper." *Gilbert v. Freshbikes, LLC*, 32 F.Supp.3d 594, 607 (D.Md. 2014) (citing *Cross v. Fleet Rsrv. Ass'n Pension Plan*, 383 F.Supp.2d 852, 856 (D.Md. 2005)). "Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). While courts frequently defer to a plaintiff's choice of forum, such "deference is not limitless . . . and can be overcome." *Gilbert*, 32 F.Supp.3d at 607 (citing *Lynch*, 237 F.Supp.2d at 617).

Ultimately, "[t]he decision whether to transfer venue is committed to the sound discretion of the trial court." *Hausfeld v. Love Funding Corp.*, 16 F.Supp.3d 591, 604 (D.Md. 2014) (alteration in original) (quoting *Mamani v. Bustamante*, 547 F.Supp.2d 465, 469 (D.Md. 2008)).

### A. Plaintiff's Choice of Forum

"Where a plaintiff sues in her home forum, her choice of venue is 'ordinarily accorded considerable weight.'" *Hausfeld*, 16 F.Supp.3d at 604 (quoting *Lynch*, 237 F.Supp.2d at 617). Such deference "is lower when the plaintiff is not [a] citizen of the [forum] state or the case does not otherwise have 'significant ties' to the forum." *Doe (J.S.H.)*, 2025 WL 2108792, at *10 (quoting *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237–38 (2ᵈ Cir. 2004)); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("Where the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor 'applies with less force.'" (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981))).

Plaintiff Doe is a citizen of Alabama, not Maryland. (ECF No. 14 ¶ 11). Moreover, every other court in this district to have considered a substantially identical case has concluded that whatever ties Maryland does have to the case—because of potential acts or omissions at Choice headquarters—are not significant

11

enough to warrant substantial deference to the out-of-state Plaintiff's choice of forum. *See Doe (J.S.H.)*, 2025 WL 2108792, at *11; *Doe (J.L.K.) v. Choice Hotels Int'l, Inc.*, No. 24-cv-3774-GLR, 2025 WL 2197035, at *6 (D.Md. Aug. 1, 2025); *Doe (C.T.K.)*, 2025 WL 2430024, at *5; Transcript of Motions Hearing at 67, *Doe (P.T.L.) v. Choice Hotels Int'l, Inc.*, No. 24-cv-3775-PX (D.Md. Aug. 26, 2025), ECF No. 43; *Doe (A.E.W.) v. Choice Hotels Int'l, Inc.*, No. 24-cv-3769-TDC, 2025 WL 2468510, at *11 (D.Md. Aug. 27, 2025). The alleged sex trafficking underpinning this case took place entirely in Alabama, not Maryland. *See Int'l Painters & Allied Trade Indus. Pension Fund v. Marrero Glass & Metal Inc.*, No. 18-cv-452-ELH, 2019 WL 423409, at *4 (D.Md. Feb. 1, 2019) (attaching little weight to the plaintiff's choice of forum when "the disputed conduct, or lack thereof, underlying the Complaint" occurred outside the forum).

Plaintiff cites *A.M.G. v. Red Roof Inns, Inc.*, No. 23-cv-4195, 2025 WL 588645 (S.D.Ohio Feb. 24, 2025), for the proposition that a "plaintiff's choice to file in the principal place of business of [the] franchisor [is] entitled to deference in a TVPRA case." (ECF No. 24, at 15 n.21). The *A.M.G.* court, in an unpublished trial court decision denying the motion to transfer, recognized that "where 'the cause of action has little connection with the chosen forum,' a plaintiff's choice of forum is given

less weight than such choice would be given otherwise." *A.M.G.*, 2025 WL 588645, at *7 (quoting *DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F.Supp.2d 890, 902–03 (S.D.Ohio 2013)). Other courts have adopted a sliding scale approach. *See Carey*, 370 F.3d at 237–38 (affirming diminished deference to plaintiff's choice of forum in proportion to diminished connection between the forum and the case). Maryland's ties to this case comprise the most tenuous portions of Plaintiff's complaint. Accordingly, deference to the Plaintiff's choice of forum is considerably diminished.

For these reasons, this factor does not weigh significantly against transfer.

**B. Convenience of the Witnesses**

"The convenience of the witnesses is 'perhaps the most important factor' in determining whether a transfer of venue should be granted." *Mamani*, 547 F.Supp.2d at 473 (quoting *Cronos Containers Ltd. v. Amazon Lines, Ltd.*, 121 F.Supp.2d 461, 466 (D.Md. 2000)).

Choice Defendants argue that the relevant witnesses, including "Plaintiff's alleged trafficker, hotel staff, knowledgeable law enforcement personnel, doctors, and other damages witnesses," are likely located in Alabama. (ECF No. 18-1, at 20–21). Choice Defendants add that this court also "might be unable to compel [those Alabama witnesses] to attend a trial in

13

the District of Maryland" due to the limits of this court's subpoena power under Fed.R.Civ.P. 45(c). (*Id.* at 21 (alteration in original) (quoting *Elliot AmQuip, LLC v. Bay Elec. Co.*, No. 10-cv-3598-ELH, 2011 WL 2174893, at *9 (D.Md. June 2, 2011))); *see also* Fed.R.Civ.P. 45(c)(1)(A) ("A subpoena may command a person to attend a trial, hearing or deposition only," in relevant part, "within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]"). Plaintiff counters that Defendant has not met its burden as the moving party to show "specific hardship," and the passage of ten years since the trafficking suggests that many of the witnesses no longer reside in Alabama. (ECF No. 24, at 15). Moreover, the witnesses related to corporate knowledge and conduct, Plaintiff contends, are located in Maryland. (*Id.* at 16). To Defendants' Rule 45(c) concern, Plaintiff responds that the court can compel witnesses to attend video depositions, which would be admissible at trial. (*Id.*).

Choice Defendants' arguments are more persuasive. At the outset, Choice Defendants' burden on specificity is lessened by the fact that Plaintiff proceeds under pseudonym, has not identified her trafficker, and alleges a long period of trafficking. It is difficult to assess the inconvenience to particular witnesses when the facts alleged do not give Choice

14

Defendants reasonable and adequate notice of who all relevant witnesses may be. The convenience inquiry must therefore proceed at a higher level of generality. Choice Defendants are almost certainly correct that nearly all the relevant witnesses were at least once located in Alabama. Whether they remain there is unclear, but mere speculation that some have moved away is insufficient to defeat the commonsense conclusion that Alabama is the likely locus of relevant witnesses. Regarding compulsory process, Plaintiff is correct that witnesses can attend video depositions, but that does not fully address the concern that the court could not compel the witnesses' in-person presence at trial. *See Doe (C.T.K.)*, 2025 WL 2430024, at *5.

The Southern District of Alabama is the more convenient forum for the witnesses. This factor therefore weighs in favor of transfer.

**C.   Convenience of the Parties**

"[A] transfer of venue that merely switches the inconvenience from one party to the other generally will be refused." *Pinpoint IT Servs., L.L.C. v. Atlas IT Export Corp.*, 812 F.Supp.2d 710, 721 (E.D.Va. 2011) (citing 15 Wright & Miller, Federal Practice and Procedure § 3849 (3$^d$ ed. 2007)). That is unlikely to be the case here. Ironically, transfer here, from the headquarters of Choice Defendants to Plaintiff's home jurisdiction, is said to switch the

15

inconvenience as between Plaintiff and Choice Defendants. Undoubtedly, the transfer will render the litigation more convenient to the franchisee defendant. Plaintiff evidently named the wrong franchisee defendant, PHP, but the parties appear now to have identified the correct franchisee defendant, an Alabama limited liability company. (ECF Nos. 23-2 ¶ 18; 26-2). Although this entity has not had a chance to weigh in, the logical assumption is that it is more convenient for an Alabama entity to litigate in Alabama than in Maryland.

Plaintiff also argues that it is more convenient to litigate in Maryland because of "the potential benefits of centralizing related TVPRA cases against Choice in this District." (ECF No. 24, at 16). The five other TVPRA cases against Choice Defendants in this district of which the court is aware, however, have all been transferred to other districts. *See Doe (J.S.H.)*, 2025 WL 2108792, at *13 (transferring the case to the Middle District of Florida); *Doe (J.L.K.)*, 2025 WL 2197035, at *7 (District of Idaho); *Doe (C.T.K.)*, 2025 WL 2430024, at *7 (Eastern District of Wisconsin); Transcript of Motions Hearing at 70, *Doe (P.T.L.)*, No. 24-cv-3775-PX, ECF No. 43 (Eastern District of Louisiana); *Doe (A.E.W.)*, 2025 WL 2468510, at *13 (Eastern District of Pennsylvania). Consequently, there is little left to centralize.

16

The Southern District of Alabama is at least marginally more convenient to the parties overall. This factor thus tilts in favor of transfer.

### D. Interest of Justice

Whether transfer is in the interest of justice is an "amorphous and somewhat subjective" assessment in which the court may account for a litany of other relevant considerations. *Doe (J.L.K.)*, 2025 WL 2197035, at *7 (quoting *Gennari Consulting, Inc. v. Wellington Corp., LLC*, No. 19-cv-1851-ELH, 2019 WL 6829102, at *9 (D.Md. Dec. 13, 2019)). "[A]voiding duplicative litigation" is one such consideration. *Id.* (quoting *Capitol Payment Sys., Inc. v. Di Donato*, No. 16-cv-882-ELH, 2017 WL 2242678, at *14 (D.Md. May 23, 2017)). Accordingly, "[c]ourts in this district have found the interest of justice favors transfer when personal jurisdiction over an indispensable party is a close question." *Doe (C.T.K.)*, 2025 WL 2430024, at *6 (collecting cases).

Here, it is highly doubtful the court could exercise personal jurisdiction over the franchisee defendant. The parties indicate that the proper franchisee defendant is an Alabama limited liability company registered and headquartered in Alabama. Therefore, it would not be subject to general jurisdiction in Maryland. Plaintiff would need to establish specific jurisdiction over the franchisee defendant in Maryland. In the five other TVPRA

17

cases against Choice in this district, four courts have found specific jurisdiction over the franchisee defendant lacking. *See Doe (J.S.H.)*, 2025 WL 2108792, at \*9 (holding that the alleged sex trafficking did not arise out of or relate to the franchisee's contact with Maryland, namely the franchise agreement); *Doe (J.L.K.)*, 2025 WL 2197035, at \*3–4 (same); Transcript of Motions Hearing at 61–63, *Doe (P.T.L.)*, No. 24-cv-3775-PX, ECF No. 43 (same); *Doe (A.E.W.)*, 2025 WL 2468510, at \*9 (same). One court found such specific jurisdiction "highly doubtful." *Doe (C.T.K.)*, 2025 WL 2430024, at \*6. The reasoning in these materially indistinguishable cases is persuasive, raising significant doubts about the assertion of specific jurisdiction over the franchisee defendant in this case.

If the franchisee defendant is indeed not subject to specific jurisdiction here, Plaintiff would need to bring her claims against the franchisee defendant separately in Alabama. Such duplicative litigation is precisely what this factor seeks to avoid. It would also be wholly unnecessary because Choice Defendants are likely subject to specific jurisdiction in the Southern District of Alabama. That district is the appropriate forum because it is likely the only forum in which Plaintiff can assert her claims against all defendants in the same litigation. *See Aphena Pharma Sols.-Md. LLC v. BioZone Lab'ys, Inc.*, 912 F.Supp.2d 309, 320–21

18

(D.Md. 2012) (holding that the interest of justice required transfer to avoid splitting the litigation, despite none of the other factors favoring transfer).

Another consideration under this factor is the "interest in having local[] controversies decided at home." *Hausfeld*, 16 F.Supp.3d at 605 (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013)). Plaintiff and Choice Defendants dispute whether Maryland or Alabama has a greater interest in this controversy. (*Compare* ECF No. 18-1, at 22, *with* ECF No. 24, at 17). Courts in this district to consider this particular issue have concluded that the state of the franchisee where the alleged sex trafficking occurred has a greater interest than the state of the franchisor. *E.g.*, *Doe (J.S.H.)*, 2025 WL 2108792, at *12 ("[T]his case has relatively stronger ties to Florida, where the sex trafficking actually occurred[.]"). The court need not decide that issue here. Even if Maryland did have a marginally greater interest, that would not outweigh the imperative of keeping the litigation intact. *See Aphena*, 912 F.Supp.2d at 320–21.[6]

The interest of justice strongly favors transfer.

*    *    *

---

[6] Plaintiff also raises her centralization argument here again. As explained, however, there is nothing left to centralize in this district.

19

In sum, Plaintiff's choice of forum is not entitled to meaningful deference, transfer is more convenient to the witnesses and parties, and transfer is strongly in the interest of justice. Accordingly, the court will transfer the case to the Southern District of Alabama, where Choice Defendants' alternative motion to dismiss, nonparty Trent Hall's correspondence, and Plaintiff's motion for leave to amend will remain for resolution.

### III. Conclusion

For the foregoing reasons, Choice Defendants' motion to transfer venue to the United States District Court for the Southern District of Alabama will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
